UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE FARMERS & MERCHANTS STATE BANK, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:09-cv-0376 ) Judge Sharp ) |
| DIRECT SCAFFOLD SERVICES CO., LLC | ) ) ) |
| Defendant. | ) ) ) |
| CONTRACTORS ACCESS EQUIPMENT, INC. | ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) ) |
| THE FARMERS & MERCHANTS STATE BANK, | ) ) ) |
| Respondent. | ) |

## MEMORANDUM

In July 2014, Contractors Access Equipment, Inc. ("CAE") filed a Motion to Enforce Judgment (Docket No. 54) of the Court's December 2009 Order (Docket No. 27) approving the sale of Direct Scaffold Services ("DSS"). The Farmers & Merchants State Bank ("Farmers") filed a Motion for Summary Judgment (Docket No. 81) as to CAE's Motion to Enforce.

On March 17, 2016, the Court granted Farmers' Motion for Summary Judgment (Docket No. 83), finding that CAE has no standing to seek reimbursement for paying DSS's outstanding tax debts. (Docket No. 90, p. 12.) CAE has moved to alter that judgment pursuant to Rule 59(e)

1

of the Federal Rules of Civil Procedure. (Docket No. 93.) CAE also moves, pursuant to Rule 21, to add Contractors Access Equipment of Jackson, Inc. ("CAE-Jackson") and Phil Mumford, Sr. as co-Petitioners.

The Court will deny both Motions.

## BACKGROUND

### I. Factual Background

DSS is a Tennessee limited liability company that sells scaffolding products, ladders, and accessories. (See Docket No. 1, p. 2.) In February 2007, DSS took out a loan from Farmers. (Docket No. 1, pp. 1–2.) That loan included a Security Agreement that gave Farmers a lien on all of DSS's assets in the event of default. (Docket No. 1, p. 2.)

DSS eventually defaulted. At Farmers' request, the Court appointed a receiver for DSS. (Docket No. 1, p. 4.) The receiver held a Court-approved auction sale of DSS's assets in December 2009; CAE won that auction with a $2.9 million bid. (See Docket No. 21.) Phil Mumford, Sr.—the sole owner of CAE—paid the entire sum with money from his personal accounts. (Docket No. 81-1, pp. 56–57.)

Soon after winning the auction sale, Mumford, Sr. formed CAE- Jackson. (Docket No. 81-1, p. 56.) Mumford, Sr. was the sole owner of CAE-Jackson until January 2012, when he transferred all of his ownership interest to his son, Phil Mumford, Jr. (Docket No. 85-2, p. 2.) Though the Mumfords own both CAE and CAE-Jackson, CAE and CAE-Jackson have remained separate legal entities.

In early 2010, Mumford, Jr. received notice that DSS owed Rankin County, Mississippi $40,347.39 in unpaid property taxes for a facility that it operated in Pearl, Mississippi. (See Docket No. 55-2; Docket No. 81-1, pp. 39–41.) Mumford, Jr. later testified that, although the

2

lien seemed like a "significant problem," it simply "fell off the radar" for some reason. (Docket No. 81-1, p. 44; Docket No. 81-2, pp. 20–21.)

Four years passed. Then, in the spring of 2014, Rankin County intensified its collection efforts, suing CAE-Jackson for the tax debt and sending a sheriff to lock down the DSS facility in Pearl. (Docket No. 55-3; Docket No. 81-1, pp. 49–50.) Mumford, Jr. eventually came to a settlement with Rankin County for $107,184.54. (Docket No. 66, p. 2.)

Around that time, Mumford, Jr. learned that DSS had a second outstanding tax lien in Stone County, Mississippi. (Docket No. 55-4.) Mumford, Jr. reached a settlement with Stone County for $56,656.42, plus interest. Both tax settlements were paid with funds from CAE-Jackson's accounts. (Docket No. 81-1, pp. 52–54.)

**II. Procedural History**

In July 2014, CAE filed a Petition to Enforce the Court's December 2009 Order. (Docket No. 54.) That Petition, which states that CAE paid the outstanding tax debt, requests that the Court "require[e] [Farmers] to reimburse [CAE] for the $171,028.47 in back taxes, interest, and fees related to the Direct Scaffold assets that it has paid." (Docket No. 54, p. 3.) The petition never mentions CAE-Jackson, nor does it acknowledge that CAE-Jackson actually paid the tax debts. (See Docket No. 81-1, pp. 52–54.)

Farmers moved for summary judgment on November 6, 2015. (Docket No. 81.) It argued, among other things, that CAE has no standing to seek reimbursement for paying DSS's outstanding tax debts. (Docket No. 83, pp. 10–11.) In response, CAE argued that it received less than it bargained for when it bought "assets that were not free and clear of liens and encumbrances and carried with them a hidden liability."[1] (Docket No. 85, p. 15.) It urged the

---

[1] At the summary-judgment stage, CAE also argued that it was exposed to potential liability from Stone County, Rankin County, and CAE-Jackson. (Docket No. 85, p. 15.) CAE's Rule 59(e) Motion does not mention that

3

Court to find that, since CAE had only one owner when it bought the DSS assets, the owner's actions with respect to those assets should be construed as the actions of CAE. (Docket No. 85, p. 14.)

The Court granted Farmers' Motion, concluding that "CAE ha[d] not shown that it suffered any injury" and thus had "no standing to try this dispute in federal court." (Docket No. 90, p. 14.) The Court noted that "CAE . . . never paid for anything" in the DSS sale. (Docket No. 90, p. 8.) The Court went on:

> CAE never put any money up for the DSS assets, so it would be incorrect to say that it suffered any economic injury through overpayment; if anybody suffered an injury in paying too much for the assets, it was Mumford, Sr. himself. And, of course, CAE may only sue to remedy *its own* injuries—not those of another person. See, e.g., Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 106 (1998) (finding no standing when respondent did "not [seek] remediation of its *own* injury" (emphasis added)).

(Docket No. 90, p. 9.)

The Court also rejected CAE's argument that "CAE and Mumford, Sr. [are] one in the same," for purposes of paying for the DSS assets. (Docket No. 90, p. 10.) It pointed out that "[a] corporation's existence is separate and distinct from that of its owner," and refused to let CAE "sidestep its corporate personality in order to gain standing for an injury that it never suffered." (Docket No. 90, pp. 10–11.)

On April 14, 2016, CAE filed a Motion to Alter the Court's decision. (Docket No. 93.) As part of that Motion, it also moved to add CAE-Jackson and Mumford, Sr. as co-Petitioners.

---

argument; evidently, CAE has chosen not to pursue it any further. The Court therefore focuses only on CAE's overpayment-as-injury argument.

# ANALYSIS

## I. Rule 59(e) Motion

Rule 59(e) of the Federal Rules of Civil Procedure allows a party to move to amend a judgment within 28 days. FED. R. CIV. P. 59(e). A district court may grant a Rule 59(e) motion only when a party shows (1) a clear error of law in the court's earlier judgment; (2) newly-discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." Hendson v. Walled Lake Consol. Schs., 469 F.3d 479, 496 (6th Cir. 2006). But Rule 59(e) motions "are not intended as a vehicle to relitigate previously considered issues" and "are not the proper vehicle to attempt to obtain a reversal of a judgment by offering the same arguments previously presented." Pitt Excavating v. Pitt, 3:13-cv-00909, 2014 WL 1715442, at *3 (M.D. Tenn. Apr. 30, 2014).

CAE maintains that the Court's earlier judgment was clearly erroneous, and that the Court "misread[] . . . the facts" in finding that CAE never paid for the DSS assets. (Docket No. 83, p. 3.) Specifically, CAE argues that Mumford, Sr. paid for the DSS assets "on behalf of CAE." (Docket No. 83, p. 3.) That payment, CAE concludes, establishes CAE's financial stake in the DSS sale and shows that it overpaid for the DSS assets.

The Court is unpersuaded. CAE's argument is virtually identical to the argument that it presented in its summary-judgment brief, in which CAE urged the Court to consider Mumford, Sr.'s payment as a payment from CAE. (See Docket No. 85, p. 14; Docket No. 90, p. 9.) And CAE offers nothing to show how the Court misunderstood the facts of the DSS sale—specifically, the fact that "the entire $2.9 million purchase price was paid from the personal accounts of CAE's owner, Phil Mumford, Sr." (Docket No. 90, p. 8.) Indeed, CAE even admits

that this fact is true, stating that "the money paid at closing came from Phil Mumford Sr.'s personal funds." (Docket No. 85, p. 3.)

CAE may not simply rehash its summary-judgment argument at this stage of the litigation and expect a different result. The Sixth Circuit has repeatedly held that a Rule 59(e) motion "may not be used to re-litigate issues previously considered" and rejected by the Court. Am. Marietta Corp. v. Essroc Cement Corp., 59 Fed. App'x 668, 671 (6th Cir. 2003); Pitt Excavating, 2014 WL 1715442, at *3 (noting that Rule 59(e) motions "are not the proper vehicle to attempt to obtain a reversal of a judgment by offering the same arguments previously presented"). After all, it would be a waste of the Court's time if a party could lose at summary judgment, then simply refile its summary-judgment brief with "Reconsider Me" stamped on the front page. But CAE has done little more than that. Thus, to the extent that CAE argues that Mumford, Sr.'s $2.9 million payment was made "on behalf of CAE," CAE's Motion fails.

Outside of its recycled argument, CAE has not given the Court any reason to alter the Court's March 17, 2016 decision. The only substantive portion of its brief that was not raised at the summary-judgment stage concerns two attachments: (1) a fax cover sheet purporting to show a $50,000 wire transfer with a reference line "DSS PURCHASE DEPOSIT;" and (2) a declaration from Mumford, Jr., stating that he found the fax cover sheet after the Court's March 17, 2016 decision." (Docket Nos. 94-1, 94-2.) These two attachments, CAE argues, show that CAE paid for the DSS assets. (Docket No. 94, p. 5 n.3.)

The Court disagrees. For one thing, the fax cover sheet does not constitute newly discovered evidence. CAE admits that "this document was in existence at the time of the [summary-judgment] motion." (Docket No. 94, p. 5 n.3.) And Rule 59(e) motions must rely on

6

new evidence, "not information readily available during the prior proceedings." <u>Am. Marietta Corp. v. Essroc Cement Corp.</u>, 59 Fed. App'x 668, 672 (6th Cir. 2003).

Moreover, Mumford, Jr.'s declaration directly contradicts his earlier deposition testimony. (Docket No. 94-1.) On July 31, 2015, he testified that "[a]ll the money that came in [for the asset purchase] would have come from [his] father personally," and that his "father's personal money would have been the sole source of funds for the deposit and all the payments and assets for the old Direct Scaffold." (Docket No. 81-1, pp. 56–57.) But in the newly-filed declaration, he states that "the deposit was paid out of a CAE account." (Docket No. 94-2, p. 2.) This new assertion is an obvious attempt to create an issue of fact on the question of CAE's payment in the DSS asset sale. The Court will therefore disregard it. <u>McClain v. Mason Cty., Ky.</u>, 618 Fed. App'x 262, 266–67 (6th Cir. 2015) (affirming decision to disregard declaration that contradicted the declarant's earlier deposition testimony); <u>Reid v. Sears, Roebuck & Co.</u>, 790 F.2d 453, 460 (6th Cir. 1986) (holding that a "party may not create a factual issue by filling an affidavit, after a motion for summary judgment has been made, which contradicts his or her earlier deposition testimony").

CAE has not shown any clear error in the Court's summary-judgment ruling, nor has it offered any new evidence that would change the outcome of that decision. The Court sees no reason to grant Rule 59(e) relief.

**II. Rule 21 Motion**

CAE also asks the Court to allow it to amend its Petition pursuant to Rule 21 to add CAE-Jackson and Mumford, Sr. as so-petitioners. CAE notes that, with Mumford, Sr. and CAE-Jackson, at least one Petitioner would have standing to enforce the Court's December 2009 Order.

But a party without standing may not add another party to its complaint in order to create standing. In Zurich Insurance Co. v. Logitrans, Inc., 297 F.3d 528, 531 (6th Cir. 2002), the Sixth Circuit held that a plaintiff which had suffered no injury could not move to substitute a new plaintiff. The Court of Appeals reasoned that, because the original plaintiff "had no standing to bring th[e] action," it also had "no standing to make a motion to substitute the real party in interest." Id. at 531. See also, e.g., GMAC Mortg., LLC v. McKeever, No. 12-5802, 2016 WL 3090330, at *4 (6th Cir. June 2, 2016) ("In order for [plaintiff] to have succeeded on its motion to substitute . . . , it must have had standing to pursue that motion in the first instance."); Lierboe v. State Farm Mut. Auto. Ins. Co., 350 F.3d 1018, 1024 (9th Cir. 2003) (affirming dismissal without opportunity to substitute new named plaintiff when named plaintiff never had standing to bring the claim); Stapp v. Broadwing, Inc., No. 1:07-CV-00970, 2009 WL 530100, at *3 (S.D. Ohio Feb. 27, 2009) ("Because the Court finds that plaintiffs lack standing under the Amended Compliant, the Court cannot allow Plaintiffs to amend the Complaint to create jurisdiction retroactively.").

The same principle applies here. CAE never showed that it suffered any injury, so it has no standing to try this dispute in federal court. Without standing, it may not move to substitute CAE-Jackson or Mumford, Sr.

## **CONCLUSION**

The Court will deny CAE's Motion to Alter Judgment and CAE's Motion to Add Parties. An appropriate Order will be entered.

```
                                   _____
                                   KEVIN H. SHARP
                                   UNITED STATES DISTRICT JUDGE
```